WO                                                                                                          MW

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Morshed Alam, | No. CV-19-05538-PHX-MTL (CDB) |
| Petitioner, | |
| v. | **ORDER** |
| Chuck Keeton, et al., | |
| Respondents. | |

Petitioner Morshed Alam (A# 215-826-397), who is detained in the CoreCivic La Palma Correctional Center, in Eloy, Arizona, has filed, through counsel, a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), a Motion for Preliminary Injunction (Doc. 2), a Motion to Expedite (Doc. 19), and a Motion for Leave (Doc. 21). As follows, the Petition and this action will be dismissed, and the motions will be denied.

**I.     Background**

    **A.     Custody and Immigration Proceedings**

Petitioner is a native and citizen of Bangladesh. On September 16, 2018, he entered the United States without inspection near Otay Mesa, California, and was encountered by the United States Department of Homeland Security ("DHS"), Customs and Border Protection ("CBP"). (Doc. 14-2 at 8-13.) Petitioner stated that he was 17 years old and was designated as an unaccompanied minor child. (*Id.* at 2 ¶ 4.) He was then transferred into the custody of the United States Department of Health and Human Services ("HHS"), Administration for Children and Families, Office of Refugee Resettlement ("ORR").

ORR placed Petitioner in a Southwest Key juvenile facility in Phoenix, Arizona, on September 18, 2018. (Docs. 1-4 at 2; 14-2 at 6.) On September 29, 2018, an ORR case manager met with Petitioner and advised him that she had received his birth certificate and school identification. (*Id.*) The documents reflected that Petitioner was born on February 21, 2001, making him 17 years old at the time. (Docs. 1-2 at 1; 1-3 at 2, 4; 14-2 at 6, 43.) ORR later verified Petitioner's birth certificate on the Bangladesh government's verification website. (Doc. 1-4 at 2.)

On October 25, 2018, ORR Federal Field Specialist Wilfred Calero issued an age redetermination memorandum requesting that Petitioner be transferred into the custody of United States Immigration and Customs Enforcement ("ICE") "based on evidence that he is not a minor and therefore [could] be housed in SWK Kokopelli shelter." (Doc. 14-2 at 6.) The memorandum stated:

> This individual entered the facility on 9/18/2018 as a minor named Morshed Alam, with a reported date of birth [redacted] 2001, age 17. Individual's family provided Program Case Manager with a copy of birth certificate from country of origin on 9/20/2018. Birth certificate verification was completed using a website provided by the Bengali Consulate and the results coincide with the information that individual provided. Due to concerns with individual's physical appearance, dental forensics exam was requested. Dental forensic results received on 10/19/2018, concluded that individual has an age range between 16.29 and 24.41 with a mean of 20.35. The statistical probability of the client being over the age of 18 was 87.7%. After speaking to individual and family, both were adamant that the individual is 17 and turning 18 on [redacted] 2019. Individual's family provided a copy of Individual's school identification and letter reporting school attendance/grades.

(*Id.*)

On October 31, 2018, ORR notified ICE "that they had an adult in their custody" and sent the age redetermination memorandum, "a screen shot of [Petitioner's] birth information," and a dental forensics report that "revealed an 87.7 percent chance that [Petitioner] was an adult." (Docs. 1-5; 14-2 at 9.) An ICE deportation officer reported the same day that "[p]rior to [his] entry into the United States, [Petitioner] was fingerprinted by a foreign entity," and "[d]uring that encounter, [he] stated that his date of birth [was]

May 5, 1995." (*Id.*)[1]  Petitioner was then transferred into ICE custody and detained for removal proceedings in the CoreCivic La Palma Correctional Center ("LPCC"). (Doc. 14-2 at 9, 17 ¶¶ 3-5.)

Petitioner retained counsel, and on November 8, 2018, counsel sent DHS "Officer Steve" a copy of Petitioner's birth certificate and "a [t]estimonial from his high school in Noakhali, Bangladesh," which listed his year of birth as 2001. (Docs. 1-8 at 2; 14-2 at 15.) On November 13, 2018, ICE placed Petitioner in a segregation unit in the CoreCivic Eloy Detention Center "while ICE investigated [Petitioner's] counsel's assertion that [he] was seventeen years-old." (Doc. 14-2 at 17 ¶ 7.)

CBP conducted a search of flight records for Petitioner, which revealed that when he was travelling to the United States, Petitioner had "transited from Sao Paulo, Brazil to Santa Cruz de la Sierra, Bolivia while using a Bangladeshi passport." (Doc. 14-2 at 2 ¶ 7.) After obtaining "the passport number that Petitioner used to travel to the United States along with a photograph of Petitioner" from the CBP National Targeting Center, ICE emailed the Bangladesh Embassy asking for verification of Petitioner's birth certificate and for a copy of his Bangladesh passport. (Doc. 14-2 at 17 ¶ 8; 43-44.) On November 15, 2018, the Embassy responded that "[th]ere the DOB of the subject [was] [redacted] 1995," and attached a copy of Petitioner's passport information, which reflected that Petitioner had been issued a Bangladesh passport in 2017 that listed a birthdate of May 5, 1995. (Docs. 14-2 at 43-44; 16-1 at 4-5.) The same day, ICE "determined there was sufficient evidence that [Petitioner] was over the age [of] eighteen" and informed counsel of its decision. (Doc. 14-2 at 17 ¶ 9.) Petitioner was then returned to LPCC. (*Id.*)

Petitioner requested a redetermination of his custody status, and following a hearing on December 6, 2018, an immigration judge denied Petitioner release on bond, citing "Danger as to Identity, Flight." (Docs. 1-7; 14-2 at 20.)

---

[1] Respondents state that "DHS systems reflect that [Petitioner's] fingerprints were captured by various foreign governments under the Biometric Identification Transnational Migration Alert Program (BITMAP)" and indicate that "when fingerprinted in Panama, Costa Rica, and Guatemala, [Petitioner] claimed a date of birth of [redacted] 1995." (Doc. 14-2 at 2 ¶ 6.)

On January 21, 2019, Petitioner's mother obtained a new corrected Bangladesh passport for Petitioner which listed a birthdate of February 21, 2001. (Docs. 1-10 at 2; 14-2 at 25; 16-2 at 9, 23.) Petitioner provided the passport to ICE on an unknown date, and the passport along with several other documents were sent for forensic analysis. (Docs. 14-2 at 22; 16-1 at 11-12.) The ICE forensic laboratory report, issued on February 28, 2019, concluded that the 2019 passport was "genuine." (Doc. 14-2 at 22.) Petitioner then filed a motion for a second bond hearing, which was denied on March 25, 2019, due to "[n]o material change in circumstances." (Doc. 14-2 at 27.)

An immigration judge ("IJ") ordered Petitioner removed from the United States on May 8, 2019, and denied his application for asylum, withholding of removal, and protection under Article III of the United Nations Convention Against Torture. (Docs. 14-2 at 29-30; 16-2 at 5.)[2] Petitioner appealed the decision to the Board of Immigration Appeals ("BIA"), and then to the Ninth Circuit Court of Appeals, which entered a stay of removal. (Docs. 14-2 at 32-39; 18.) The appeal remains pending. *See Alam v. Barr*, No. 19-72744 (9th Cir.).

Petitioner's counsel emailed ICE Assistant Field Office Directors Jason Ciliberti and Cesar Topete on October 29, 2019, advising that an incorrect age determination had been made and requested that Petitioner be released into the care of a sponsor. (Doc. 1-8 at 3.) Counsel provided copies of Petitioner's birth certificate, consulate verification of the birth certificate, school records, and corrected passport, all which listed Petitioner's year of birth as 2001. (*Id.*)

On November 14, 2019, ORR "rescind[ed] the October 25, 2018 age redetermination letter accompanying the transfer of [Petitioner] pursuant to 8 U.S.C. § 1232(c)(2)(B) and dated October 25, 2018." (Doc. 14-2 at 41.)

On April 16, 2020, Petitioner received a custody redetermination hearing pursuant to *Casas-Castrillon v. DHS*, 535 F.3d 942 (9th. Cir. 2008). (Doc. 20.) At the conclusion

---

[2] *See also* Executive Office for Immigration Review ("EOIR") Automated Case Information System, https://portal.eoir.justice.gov/InfoSystem/CourtInfo.

of the hearing, the IJ denied Petitioner's request for release on bond "citing three principal reasons for finding that Petitioner is a flight risk": "Petitioner's sponsor does not earn a sufficiently high salary to pay the high bond that the judge would have set for Petitioner in order to guarantee his future appearance in court"; "Petitioner is in quarantine at [LPCC], where 13 detainees have tested positive for COVID-19"; and, the BIA had upheld the judge's "negative credibility determination." (*Id.*)

### B. Habeas Corpus Proceedings

Petitioner filed the instant § 2241 Petition naming former LPCC Warden Chuck Keeton, ICE Phoenix Field Office Director Albert Carter, ICE Assistant Phoenix Field Office Directors Cesar Topete and Jason Ciliberti, Acting DHS Secretary Chad Wolf, HHS Secretary Alex M. Azar, II, and United States Attorney General William Barr as Respondents.

Petitioner brings five claims for relief. In Ground One, Petitioner claims his continued detention in ICE custody pursuant to his age redeterminations violates the Trafficking Victims Protection and Reauthorization Act ("TVPRA") and its implementing procedures. In Grounds Two and Three, Petitioner claims that ICE's failure to consider placing him in the least restrictive setting and to make alternative to detention programs available to him when he reached the age of 18 violates the TVPRA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. In Grounds Four and Five, Petitioner claims his continued detention violates his substantive and procedural due process rights under the Fifth Amendment.[3]

---

[3] Following completion of briefing in this case, Petitioner filed a motion for leave (Doc. 21) and a proposed amended habeas petition (Doc. 21-1) containing four additional claims for relief: in proposed Grounds Six through Eight, Petitioner challenges his continued detention under the present conditions due to the risks posed by COVID-19, and in proposed Ground Nine, Petitioner challenges his prolonged detention. He additionally asks the Court to: (a) "[i]ssue a declaration that Petitioner's continued detention in civil immigration custody while COVID-19 continues to spread throughout the detention center violates the Due Process Clause," and (b) "[i]ssue a declaration that [Petitioner's] continued detention has become prolonged and order Respondents to release Morshed after employing appropriate alternatives to detention to mitigate their concern of flight risk." As a matter of judicial efficiency and discretion, the Court will consolidate Petitioner's prolonged detention claim with Grounds Four and Five of the Petition, but will otherwise deny the motion for leave without prejudice to Petitioner presenting his proposed COVID-19 condition claims in a new petition filed in a new action.

Petitioner asks the Court to: (1) order his immediate release from custody; (2) "[d]eclare that Respondent and ORR's age determination was based solely on a bone or dental scan (radiograph) analysis and is therefore in violation of [the TVPRA]"; (3) order ORR to "immediately rescind the age redetermination memo"; (4) enjoin ICE and EOIR "from applying the unlawful age redetermination"; (5) declare that ICE's failure to place Petitioner in the "least restrictive setting available" and make "alternative to detention programs" available to him violates the TVPRA; (6) order ICE to consider Petitioner for, and place him in, the least restrictive setting available after taking into account whether he is a danger to himself or the community or is a flight risk, in accordance with the TVPRA; (7) order ICE to allow Petitioner to participate in "alternative to detention programs" utilizing a continuum of alternatives based on his need for supervision, including placement with an individual or organizational sponsor, or in a supervised group home, in accordance with the TVPRA; (8) award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act; and (10) grant any other and further relief that the Court deems just and proper. (Doc. 1 at 19-20.)

In response, Respondents argue that Petitioner has no right to relief against ORR; the Court lacks jurisdiction to review ICE's determinations; ICE was not required to consider Petitioner for least restrictive placement or alternatives to detention programs; Petitioner's custody challenges are premature; and the Court lacks jurisdiction because Petitioner has failed to administratively exhaust his claims. (Doc. 14.)

**II.    Scope of Review**

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). The writ of habeas corpus historically "provide[s] a means of contesting the lawfulness of restraint and securing release." *Department of Homeland Security v. Thuraissigiam*, 591 U.S. ___, 140 S. Ct. 1959, 1969 (2020); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008); *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th

Cir. 2012) (habeas corpus "provides a remedy to non-citizens challenging executive detention.").

Habeas corpus review in federal district court is not available for claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," 8 U.S.C. § 1252(g), "arising from any action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9), or "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding [an alien's] detention or release," *Demore v. Kim*, 538 U.S. 510, 516 (2003) (discussing 8 U.S.C. § 1226(e)); *see also* 8 U.S.C. § 1252(a)(2)(B)(ii) (precluding review of other specified discretionary decisions and actions).[4] However, "the extent of the Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or 'decision.'" *Jennings v. Rodriguez*, 583 U.S. ___, 138 S. Ct. 830, 841 (2018). Thus, "challenges to the statutory framework" authorizing detention, *Jennings*, 138 S. Ct. at 841, "questions of law" raised in the application or interpretation of statutes, *Leonardo v. Crawford,* 646 F.3d 1157, 1160 (9th Cir. 2011), and "constitutional claims," such as "claims that the discretionary process itself was constitutionally flawed[,] are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241,'" *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Gutierrez-Chavez v. I.N.S.*, 298 F.3d 824, 829 (9th Cir. 2002)).

**III.    Discussion**

An "unaccompanied alien child" ("UAC") is defined as an alien who: "(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom—(i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(g).

---

[4] *See also Patchak v. Zinke*, 583 U.S. ___, 138 S. Ct. 897, 905 (2018) (finding that jurisdiction-stripping provision that "applie[d] '[n]otwithstanding any other provision of law,'" included "the general grant of federal-question jurisdiction, 28 U.S.C. § 1331."); 5 U.S.C. § 701(a)(1) (the APA does not apply "to the extent that ... statutes preclude judicial review.").

Congress enacted the Homeland Security Act ("HSA") in 2002, which transferred responsibility to HHS for "'coordinating and implementing the care and placement of unaccompanied alien children,' 'ensuring that the best interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied alien child,' 'implementing policies with respect to the care and placement of unaccompanied alien children,' and identifying 'a sufficient number of qualified individuals, entities, and facilities to house' such children." *Flores v. Sessions*, 862 F.3d 863, 870 (9th Cir. 2017) (quoting 6 U.S.C. § 279(b)(1)). In 2008, the TVPRA, codified in relevant part at 8 U.S.C. § 1232, was enacted to address the framework for the care and custody of unaccompanied alien children in accordance with the HSA.

### A.   Ground One

The TVPRA requires that "[HHS], in consultation with [DHS], shall develop procedures to make a prompt determination of the age of an alien, which shall be used by [DHS] and [HHS] for children in their respective custody. At a minimum, these procedures shall take into account multiple forms of evidence, including the non-exclusive use of radiographs, to determine the age of the unaccompanied alien." 8 U.S.C. § 1232(b)(4). Pursuant to this provision, HHS and DHS "jointly [] develop[ed] age determination policies and procedures" which are set forth in the *ORR Guide: Children Entering the United States Unaccompanied* § 1.6, *Determining the Age of an Individual without Lawful Immigration Status* ("ORR Guide"). (Doc. 1-8.)[5] The ORR Guide provides:

> Typically, DHS is the agency that apprehends individuals without lawful immigration status, including unaccompanied alien children (UAC), while HHS is the agency responsible for the care and custody of UAC transferred to its care. HHS authority to provide care and custody applies only to individuals who have not attained 18 years of age.
>
> Each agency acknowledges the challenges in determining the age of individuals in custody. These challenges include, but are not limited to:
>
> • Unavailable documentation;
> • Contradictory or fraudulent identity documentation and/or statements;

---

[5] *ORR Guide: Children Entering the United States Unaccompanied*, https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied.

- 8 -

- Physical appearance of the individual; and
- Diminished capacity of the individual.

The TVPRA requires the age determination procedures, at a minimum, to take into account multiple forms of evidence. Accordingly, under these procedures, each case must be evaluated carefully based on the totality of all available evidence, including the statement of the individual in question.

ORR Guide § 1.6 (Aug. 31, 2015).

*Unaccompanied Alien Children in HHS Custody*

HHS may make age determinations of UAC when they are in HHS custody on a reasonable suspicion that a child in HHS custody is 18 years or older.

In the event there is conflicting evidence regarding the age of an unaccompanied alien child in HHS custody, the HHS funded care provider case worker shall immediately notify the HHS Federal Field Specialist (FFS). The FFS will make the age determination based on his/her review of the multiple forms of evidence collected by the care provider. Until the age determination is made, the unaccompanied alien child is entitled to all services provided to UAC in HHS care and custody.

ORR Guide § 1.6.1 (Aug. 31, 2015).

*Instructions*

Case managers should seek the following as evidence when conducting age determinations. Information from each category is not required.

Documentation:

- Official government-issued documents, including birth certificates. If the unaccompanied alien child in question is not in possession of original documentation, or if the authenticity of the original documentation is in question, government officials of the unaccompanied alien child's home country must be consulted in order to verify the validity of the documentation.
- Other reliable records (e.g., baptismal certificates, school records, medical records) that indicate the unaccompanied alien child's date of birth.
- Statements by individuals (including the unaccompanied alien child) determined to have personal knowledge of the unaccompanied alien child's age, and who HHS concludes can credibly attest to the age of the unaccompanied alien child:
- Statements provided by the unaccompanied alien child regarding his or her age or birth date. (An unaccompanied alien child's uncorroborated declaration regarding age is not used as the sole basis for an age determination.)
- Statements from the unaccompanied alien child's parent(s) or legal guardian(s), if such persons can be identified and contacted.
- Statements from other persons.
- Information from another government agency (Federal, State, local or foreign)

- State/local arrest records.
- Child welfare agency records.

Medical Age Assessments:

Medical Age Assessments include both the use of imaging technology, such as radiography, and physical examinations. Regarding these assessments:

- A medical professional experienced in age assessment method(s) must perform the examination, taking into account the individual's ethnic and genetic background.

- Dental and skeletal (bone) maturity assessments using radiographs may be used to determine age, but only in conjunction with other evidence.

- As no current medical assessment method can determine an exact age, best practice relies on the estimated probability that an individual is 18 or older. The examining doctor must submit a written report indicating the probability percentage that the individual is a minor or an adult.

ORR Response to Medical Age Assessments:

- The FFS supervisor must review the determination regarding the age submitted by the examining doctor.

- If an individual's estimated probability of being 18 or older is 75 percent or greater according to a medical age assessment, and this evidence has been considered in conjunction with the totality of the evidence, ORR may refer the individual to DHS. The 75 percent probability threshold applies to all medical methods and approaches identified by the medical community as appropriate methods for assessing age.

- The FFS compiles all pertinent information (e.g., how reasonable suspicion was raised that the subject is over 18, the information referenced, the individuals or agencies consulted, statements and conclusions) and documents it in a memorandum for review and approval by the FFS Supervisor.

- The FFS then will forward the memo to the care provider facility case manager to be included in the unaccompanied alien child's case file and to the ICE Detention and Removal Office (DRO) Field Office Juvenile Coordinator (FOJC) for inclusion in the unaccompanied alien child's A-file.

At any time, an unaccompanied alien child in ORR care or his/her designated legal representative may present new information or evidence that he/she is 18 or older for re-evaluation of an age determination. New information will be reviewed and evaluated by the FFS and, if necessary, the FFS Supervisor, in a timely manner and shared with the DRO FOJC to determine if the current placement is appropriate. If the new information or evidence indicates that an individual who is presumed to be an unaccompanied alien child is actually an adult, then HHS will coordinate with the assigned FOJC to immediately transfer the individual to an adult DRO facility.

ORR Guide § 1.6.2 (July 5, 2016).

Petitioner alleges that ICE failed to adhere to the TVPRA when it made its age determination and detained him in its custody as an adult.[6] The Court has habeas corpus jurisdiction to review this claim because it challenges ICE's detention authority, not its discretionary decision to detain, rather than release, Petitioner. While it precludes this Court from reviewing ICE's discretionary weighing of evidence and decision, 8 U.S.C. § 1226(e) does not bar review of whether ICE complied with the requirements established by § 1232(b)(4) in order to exercise its detention authority. *See Jennings*, 138 S. Ct. at 841.[7]

Here, the records show that in making its initial determination to transfer and detain Petitioner on October 31, 2018, ICE considered the information contained in the age redetermination memorandum (which incorporated his birth certificate and website verification, school records, and statements about age), the "screen shot of [Petitioner's] birth information," the dental forensics report, and the identity information obtained from foreign entities. (*See* Docs. 1-5; 14-2 at 9.) And in making its determinations on November 15, 2018, the evidence shows that ICE considered Petitioner's claim that he was 17 years old, the birth certificate and high school record provided by Petitioner's counsel, and the travel and passport information provided by CBP and the Bangladesh Embassy. (*See* Doc. 14-2 at 17 ¶¶ 7-9; 43-44.)

Petitioner fails to demonstrate that ICE's determinations violated the TVPRA. Petitioner argues that Respondents failed to satisfy their obligation to "take into account multiple forms of evidence, including the non-exclusive use of radiographs," 8 U.S.C. § 1232(b)(4), and make an age determination "based on the totality of all available

---

[6] Respondents argue, and Petitioner does not dispute, that his challenge to ORR's age determination is now moot because it has been expressly rescinded. The Court agrees. Petitioner's ORR challenge in Ground One is therefore dismissed as moot. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990).

[7] In his Reply, Petitioner argues that "this Court has the ability to permanently declare that [he] was a UAC at the time he turned 18 and that ICE's attempts to justify their age redetermination are invalid, as requested in the instant petition." (Doc. 16 at 14.) Contrary to this assertion, a favorable decision is this case would not conclusively resolve Petitioner's age or UAC status. The Petition does not ask the Court to determine his correct date of birth or whether he "was a UAC at the time he turned 18" – it asks the Court to find that ICE violated the TVPRA.

evidence," ORR Guide § 1.6.  Yet, Petitioner does not identify other *available* evidence that ICE failed to consider in making its determinations.  Petitioner points to his "verified, *corrected* passport" and his "proffer about his age," including his testimony in immigration court "that the smugglers gave him a packet of documents and told him that he had to use them to exit the country and travel to the U.S." (Doc. 16 at 7-8 (emphasis added).)  That evidence, however, was not provided or available to ICE at the time it made its determinations.  Further, although the guidance identifies "contradictory or fraudulent documents and statements [] and unavailable documentation on date of birth" as a challenge to making an age determination, it does not preclude ICE from evaluating conflicting evidence and making a decision based on its assessment of the information before it.  *Age Determination Practices for Unaccompanied Alien Children in ICE Custody*, DHS OIG-10-12 (Nov. 10, 2009) (Doc. 1-9)[8]; *see also supra*, ORR Guide § 1.6.  Indeed, while Petitioner argues that the evidence favored a different conclusion, he has not shown that the available evidence considered could not support ICE's determinations.  Petitioner therefore fails to demonstrate that ICE's determinations were contrary to or in violation of the TVPRA and that his current detention in ICE custody pursuant to those determinations is in violation of the law.[9]  Accordingly, Ground One is dismissed.

### B.     Grounds Two and Three

The TVPRA provides that if a UAC in HHS custody reaches the age of 18 and is transferred into DHS custody, DHS "shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight," and that "[s]uch alien shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for

---

[8] *Age Determination Practices for Unaccompanied Alien Children in ICE Custody,* https://www.oig.dhs.gov/assets/Mgmt/OIG_10-12_Nov09.pdf.

[9] To the extent Petitioner additionally argues in his Reply that following his hearing(s) in immigration court, "DHS failed to comply with 8 [U.S.C. §] 1232(b)(2) by not notifying HHS of a known or suspected unaccompanied child in their custody" (Doc. 16 at 14 n.2), such claim is also without merit.  DHS satisfied its obligations under § 1232(b)(2)(B) when, at the time of his apprehension, it notified HHS and transferred Petitioner into HHS custody.

supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home." 8 U.S.C. § 1232(c)(2)(B). Petitioner argues that because his age redetermination was invalid, ICE violated the TVPRA by failing to consider his placement and release under these provisions.

Following his transfer into ICE custody in 2018, ICE determined that Petitioner was not under the age of 18 and was therefore not a UAC at the time of, or prior to, his transfer. As previously discussed, Petitioner has not demonstrated that ICE's determination was in violation of the TVPRA. Accordingly, it follows that because ICE had made a valid independent determination that Petitioner was not a UAC in HHS custody who had reached the age of 18 and transferred into DHS custody, it was not required to consider him for placement in the least restrictive setting or to treat him as eligible for an alternative to detention program. Accordingly, Grounds Two and Three are without merit and are dismissed.

### C. Grounds Four and Five

Petitioner first claims that his continued detention violates his substantive due process rights because "Respondents' interest in detaining [him] in order to effectuate removal is severely undermined by the violations of controlling statutes, regulations and guidelines, all aimed at protecting unaccompanied youth from suffering harm through unwarranted detention." (Doc. 1 ¶ 51.) This claim is without merit. As set forth above, Petitioner has not shown that there has been a violation of the statutes, regulations, or guidelines concerning "unaccompanied youth."

Next, Petitioner claims that his continued and prolonged detention without "a fair hearing before a neutral decisionmaker" violates his procedural due process rights. (Doc. 21-1 ¶ 136; *see also* Doc. 1 ¶ 53.) He alleges that "because of the illegal age determination, [he] has not been provided with a custody hearing that comports with due process" (Doc. 21-1 at ¶ 91); "[e]ven after he provided the immigration judge with a copy of the government's own expert analysis of his corrected passport that found the document to be genuine, the judge relied on extraneous speculation about [Petitioner's] sponsor's ability

to pay a bond and the quarantine at La Palma when denying the bond" (*id.* ¶ 94). This claim also fails.

Here, Petitioner has received two bond hearings. Petitioner's second bond hearing was conducted pursuant to *Casas-Castrillon, supra,* which holds that individuals who are subject to prolonged detention pending judicial review of their removal orders are entitled to a bond hearing at which the government must bear the burden to demonstrate that they pose a danger or flight risk to justify their continued detention. *See also Singh*, 638 F.3d at 1205 (holding "clear and convincing evidence standard of proof applies in *Casas* bond hearings"). Petitioner does not claim that the IJ failed to place the burden on the government, denied him an opportunity to submit rebuttal evidence, or failed to provide him with specific reasons for his decision. Nor does Petitioner claim that he has been denied an opportunity to have the custody determination reviewed; he states that he intends to file an appeal with the BIA upon receipt of the IJ's memorandum decision. Therefore, absent more, Petitioner fails to demonstrate that he has been deprived of procedural due process. *See Prieto-Romero v. Clark,* 534 F.3d 1053, 1068 (9th Cir. 2008) (concluding that "Prieto-Romero ha[d] not been denied procedural due process while in custody. He [had] received a bond hearing that afforded him an individualized determination of the government's interest in his continued detention by a neutral decisionmaker.").

Petitioner argues that the IJ's bond "determinations cannot be separated from the wrongful age determination," and "[g]iven the totality of the circumstances in [his] case, an order of release with appropriate alternatives detention is the only way to protect [his] due process rights." (Doc. 21-1 ¶ 84.) But, as above, Petitioner has not shown that ICE's determinations were "wrongful" or "illegal," and therefore necessarily fails to establish that he is entitled to additional process or release on that basis. Further, insofar as Petitioner challenges the IJ's consideration of inconsistent identity documents or the likelihood of Petitioner's success on appeal of his negative credibility finding, his claim attacks the IJ's discretionary weighing—not admission—of that evidence, which is not subject to review by this Court. *See* 8 U.S.C. § 1226(e); *Singh*, 638 F.3d at 1202; *Prieto-Romero*, 534 F.3d

at 1058. Nor is it clear that exhaustion of Petitioner's administrative remedies of such claim would be futile and obviate the need for habeas corpus intervention in the first instance. *See Leonardo,* 646 F.3d at 1160; *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

Accordingly, having failed to demonstrate entitlement to relief, the Petition and this action will be dismissed.

**IT IS ORDERED:**

(1) Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) and this action are **dismissed**.

(2) Petitioner's Motion for Preliminary Injunction (Doc. 2) and Motion to Expedite (Doc. 19) are **denied as moot**.

(3) Petitioner's Motion for Leave (Doc. 21) is **denied without prejudice** to Petitioner filing proposed Grounds 6-8 in a *new* petition filed in a *new* case.

(4) The Clerk of Court shall enter judgement accordingly and terminate this case.

Dated this 9th day of September, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge